UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                          | )                        |
|--------------------------|--------------------------|
| TERRENCE BROWN,          | )                        |
|                          | )                        |
|    Petitioner, | )                   |
|                          | )                        |
| v.                       | )   Civil No. 18-10181-LTS |
|                          | )                        |
| SEAN MEDEIROS,           | )                        |
|                          | )                        |
|    Respondent. | )                   |
|                          | )                        |

MEMORANDUM AND ORDER ON PETITION
FOR WRIT OF HABEAS CORPUS (DOC. NO. 1)

July 26, 2018

SOROKIN, J.

Terrence Brown, a prisoner at the Massachusetts Correctional Institution in Norfolk, Massachusetts, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He claims his trial counsel was ineffective for providing incorrect legal advice, causing Brown to reject a favorable plea offer. Because Brown's claim is procedurally defaulted (and, in any event, meritless), the petition is DISMISSED.

I.  BACKGROUND

On July 25, 2006, a Suffolk County jury convicted Brown of two counts of first-degree murder and related charges in connection with the shooting deaths of two victims during a botched armed robbery. Commonwealth v. Rivera, 981 N.E.2d 171, 176 (Mass. 2013), cert.

denied, 570 U.S. 907 (2013);[1] Doc. No. 1 at 1-2;[2] Doc. No. 1-1 at 1; S.A. at 1-2, 12-13.[3] The Supreme Judicial Court ("SJC") has extensively recounted "the facts the jury could have found" at Brown's trial. Rivera, 981 N.E.2d at 176-79. The following summary of those facts are relevant for present purposes:

> On August 10, 2001, [Brown] and . . . Rivera went to the [victims'] apartment . . . in the South End section of Boston. They both arrived at the door wearing dust masks and carrying firearms. . . . After they forced their way into the apartment, [Brown] bound the occupant[s'] ankles and wrists with duct tape. The defendants then searched the apartment for drugs and money, but did not find what they were looking for. . . . Rivera shot [one victim] six times in the head, and shot [the other victim] once in the head. He also attempted to shoot [a third occupant], but had run out of ammunition. [Brown] and Rivera then left the apartment. [The surviving occupant] freed himself from the duct tape, . . . and telephoned 911.
>
> . . . [Brown's] thumbprint had been found on a piece of duct tape that had been used to bind one of the victims. . . . When initially confronted with the fingerprint evidence by investigating officers, [Brown] admitted to having been present when the men forced their way into the apartment, and to having bound the victims with duct tape; he denied having been in the apartment when [Rivera] shot the victims.[4]

Doc. No. 1-1 at 2-3 (citations and a footnote omitted).

A pretrial motion to suppress Brown's statements to police was unsuccessful. Id. at 3-4. Sometime before trial, the Commonwealth offered to allow Brown to plead guilty to second-degree murder, and to recommend a sentence including parole eligibility after fifteen years, in exchange for Brown testifying against Rivera. Id. at 4. Brown's trial counsel—a seasoned criminal defense attorney—"repeatedly urged [Brown] to accept the plea arrangement." Id.;

---

[1] Brown was tried with his alleged co-venturer, Nathan Rivera, who also was convicted of first-degree murder and other charges. Rivera, 981 N.E.2d at 176.
[2] Citations to documents on the Court's electronic docket reference the assigned docket number and the page number from the ECF header at the top of each page.
[3] The respondent has filed a Supplemental Answer ("S.A.") containing the state-court record in three bound volumes. Doc. Nos. 15, 17.
[4] Here, the single justice includes a footnote stating: "According to [Brown], he left the apartment after binding the victims, and waited for Rivera outside, in a parked vehicle, where Rivera appeared 'a few minutes' later." Doc. No. 1-1 at 3 n.3.

Doc. No. 1-2 at 3-4. He even enlisted the help of another lawyer, someone with connections to Brown and his family, "to attempt to persuade [Brown] to accept what trial counsel viewed as a 'reasonable' plea arrangement 'under the circumstances.'" Doc. No. 1-1 at 4.

Despite trial counsel's consistent and emphatic recommendation, Brown "asked . . . whether there was a way to 'beat' the [murder] charges altogether, because he had not shot anyone." Id. Trial counsel told Brown

> that the only possible defense, given [Brown's] statement [to police], was to claim that he had withdrawn from the joint enterprise prior to the shooting. Counsel cautioned, however, that he viewed the chance of acquittal on this theory as very slim, warning [Brown] that juries do not like withdrawal defenses, such a defense was "weak," and the evidence against him was strong.

Id. at 4-5. Against trial counsel's advice, Brown rejected the plea and "insisted on a trial." Id. at 5. "At trial, counsel vigorously pursued a defense of withdrawal," beginning in his opening statement and continuing through his closing argument; at his request, the trial judge included a withdrawal instruction in his closing charge to the jury. Id.

As trial counsel had predicted, the defense was unsuccessful, and Brown was convicted of first-degree murder "on a theory of joint-venture felony-murder." Id. He received a mandatory sentence of life imprisonment without the possibility of parole. Doc. No. 1 at 1; Mass. Gen. Laws ch. 265, § 2(a).

Brown filed a timely direct appeal, challenging the admission of a redacted version of his statement to police and the trial court's instruction regarding withdrawal from a joint venture. S.A. at 13, 47-48. The SJC affirmed Brown's conviction and sentence on January 9, 2013. Rivera, 981 N.E.2d at 171, 176; S.A. at 15, 21. In rejecting Brown's challenge to the withdrawal instruction, the SJC reasoned that "the evidence in this case was insufficient to warrant an instruction on withdrawal," as "there was no evidence to suggest that Brown communicated to

3

Rivera any intent to withdraw," nor "evidence of an 'appreciable interval' between [Brown's] alleged withdrawal and the murders." Rivera, 981 N.E.2d at 187-88.

The SJC denied rehearing, and the United States Supreme Court denied certiorari. S.A. at 21. Meanwhile, Brown filed a pro se motion for a new trial in the Superior Court, challenging trial counsel's effectiveness in connection with Brown's rejection of the pretrial plea offer. S.A. at 15, 191, 194. Brown attributed the following statements to trial counsel: "the murder charges could be beat with a withdrawal defense," and "I advise you not to accept the Commonwealth's plea offer." S.A. at 195. But for this advice, Brown wrote, he would have pled guilty. S.A. at 207. The motion court appointed counsel to represent Brown and scheduled an evidentiary hearing. S.A. at 16.

At the hearing, trial counsel and Brown each testified about their conversations regarding the plea offer and Brown's decision to reject it. S.A. at 311-70. Ultimately, the motion court rejected Brown's claim. See generally Doc. No. 1-2. The motion court "credit[ed] in its entirety the testimony of" trial counsel, which it described as "clear and unequivocal" with respect to "the strength of the Commonwealth's case, the negotiations with the prosecutor regarding a possible plea agreement, and his advice and counsel to the defendant." Id. at 3 & n.4. The motion court also emphasized that Brown had "acknowledged that his affidavit falsely asserted that [trial counsel] advised him not to accept the Commonwealth's plea offer"—in other words, the critical allegation which formed the basis for the motion court's decision to hold an evidentiary hearing in the first instance had been a lie. Id. at 1, 5.

Brown sought review of the motion judge's decision, S.A. at 16, 18, but a single justice of the SJC concluded that Brown's claims were "neither new nor substantial" and denied his petition for review, see generally Doc. No. 1-1.

In his timely federal habeas petition, Brown presents to this Court his claim that "[t]rial counsel provided ineffective assistance when he incorrectly advised Mr. Brown that he had a legally viable withdrawal defense, resulting in Mr. Brown's rejecting a plea offer." Doc. No. 1 at 5. The same attorney appointed to represent Brown during his state-court evidentiary hearing on this claim continues to represent Brown here.

II.  LEGAL STANDARDS

A.  Procedural Default

"[A] federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." Martinez v. Ryan, 566 U.S. 1, 9 (2012). If, for example, the state's highest court refuses to address the merits of a federal claim because of "a state-law ground that 'is independent of the federal question and adequate to support the judgment,'" that claim is procedurally defaulted and barred from review by a federal habeas court. Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). The procedural default rule is meant "to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." Martinez, 566 U.S. at 9.

A petitioner may obtain review of defaulted claims only if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the[] claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. To demonstrate cause sufficient to excuse default, a petitioner must prove "some objective factor external to the defense impeded counsel's [or petitioner's] efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). To establish "actual prejudice," a petitioner must demonstrate that the alleged errors "worked to his

actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 168 (1982). If a petitioner seeks to establish a "fundamental miscarriage of justice" instead, he must demonstrate "actual innocence." Schlup v. Delo, 513 U.S. 298, 324 (1995); Janosky v. St. Amand, 594 F.3d 39, 46 (1st Cir. 2010).

B.  General Habeas Review

Even if there is no procedural bar to a federal court reviewing the merits of a habeas petitioner's claim, the standard for federal habeas relief is "difficult to meet," with the petitioner carrying a heavy burden of proof. Harrington v. Richter, 562 U.S. 86, 102 (2011); accord Cullen v. Pinholster, 563 U.S. 170, 181 (2011); see Burt v. Titlow, 571 U.S. 12, 19-20 (2013) (emphasizing the "formidable barrier" faced by federal habeas petitioner where claims already were adjudicated in state court, and limiting relief to cases of "extreme malfunctions" by state criminal justice systems). Federal district courts may not grant a writ of habeas corpus unless they find that the state court's adjudication of the petitioner's claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A ruling is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A decision constitutes an "unreasonable application" of Supreme Court precedent if the state court identifies the correct governing legal rule, but

"unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-08. This standard is not satisfied where a state court decides not "to apply a specific legal rule that has not been squarely established by" the Supreme Court. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

If a state court's decision "was reasonable, it cannot be disturbed" under § 2254(d). Hardy v. Cross, 565 U.S. 65, 72 (2011) (per curiam). A showing of clear error is not sufficient for a habeas petitioner to establish entitlement to relief. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). Relief is available only where a state court's "determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Brown v. Ruane, 630 F.3d 62, 67 (1st Cir. 2011); see also Richter, 562 U.S. at 103 (requiring a petitioner to "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"). To succeed, then, a petitioner must show that the state court's rejection of his claim was "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible options." Sanna v. Dipaolo, 265 F.3d 1, 13 (1st Cir. 2001) (quotation marks omitted).

A state court's determination of the facts, in light of the evidence before it, "is not unreasonable merely because [a] federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about a challenged factual determination, "on habeas review that does not suffice to supersede the [state] court's . . . determination." Rice v. Collins, 546 U.S. 333, 341-42 (2006). If there is "evidence in the state-court record [that] can fairly be

read to support the [state] court's factual determination," relief under § 2254(d)(2) generally is not warranted. Wood, 558 U.S. at 301-02.

Federal courts ordinarily must presume that the state court's factual findings are correct, unless the petitioner offers clear and convincing evidence to the contrary. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340-41 (2003); Pike v. Guarino, 492 F.3d 61, 68 (1st Cir. 2007) (discussing the "separate and exacting standard applicable to review of a state court's factual findings").[5]

### C. Ineffectiveness of Counsel

Strickland v. Washington, 466 U.S. 668 (1984), provides the "clearly established federal law governing" a claim that trial counsel was constitutionally ineffective. Jewett v. Brady, 634 F.3d 67, 75 (1st Cir. 2011). To satisfy Strickland's two-part test, "[f]irst, the defendant must show counsel's performance was deficient," which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." 466 U.S. at 687. "Second, the defendant must show the deficient performance prejudiced the defense." Id. This test applies not only to challenges to counsel's decisions and actions in the context of a trial, but also to challenges to counsel's representation during plea negotiations. Hill v. Lockhart, 474 U.S. 52, 58 (1985); accord Lafler v. Cooper, 566 U.S. 156, 162-63 (2012).

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010); accord Richter, 562 U.S. at 105. This is especially so because habeas review of counsel ineffectiveness claims is subject to a "'doubly deferential' standard of review that gives

---

[5] Neither the First Circuit nor the Supreme Court have defined the contours of the relationship between the presumption described in § 2254(e)(1) and the standard for relief described in § 2254(d)(2), but this Court need not parse that distinction in this case.

8

both the state court and the defense attorney the benefit of the doubt." Titlow, 571 U.S. at 15 (quoting Pinholster, 563 U.S. at 190). In this context, the "pivotal question" is not whether the petitioner has met the Strickland standard in the first instance, but whether "fairminded jurists would all agree that the [state court's] decision [that he has not met it] was unreasonable." Jewett, 634 F.3d at 75 (quotation marks omitted); accord Richter, 562 U.S. at 101.

Counsel's performance is measured objectively, considering only what is "reasonable[] under prevailing professional norms." Strickland, 466 U.S. at 687-88; accord Premo v. Moore, 562 U.S. 115, 122 (2011). Federal courts must be "highly deferential" and "indulge a strong presumption" that counsel's challenged actions might be considered sound strategy under the circumstances. Strickland, 466 U.S. at 689; accord Mirzayance, 556 U.S. at 124. "It is '[r]are' that constitutionally competent representation will require 'any one technique or approach.'" Pinholster, 563 U.S. at 195 (quoting Richter, 562 U.S. at 106). The Supreme Court has suggested that similar deference is owed to counsel's tactics and conduct during the plea bargaining process. See Missouri v. Frye, 566 U.S. 134, 145 (2012) (describing that process as one "defined to a substantial degree by personal style" and, thus, not amenable to judicially defined "detailed standards").

To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; accord Mirzayance, 556 U.S. at 127. When the claimed error arises in the plea bargaining context, the prejudice prong requires a defendant to "show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been" accepted by the defendant and the court, and that as a result the defendant would have received a less severe conviction or sentence (or both). Lafler, 566 U.S. at 164.

9

III.   DISCUSSION

   A.   Procedural Default[6]

In Massachusetts, defendants convicted of first-degree murder are entitled to plenary review of both legal and factual issues on direct appeal to the SJC. Mass. Gen. Laws ch. 278, § 33E; accord Lee v. Corsini, 777 F.3d 46, 55 (1st Cir. 2015). This broad direct review is balanced by a rule limiting post-conviction review by the SJC after it affirms a first-degree murder conviction, notwithstanding a defendant's right under Massachusetts law to file unlimited motions for a new trial in the Superior Court. § 33E; accord Lee, 777 F.3d at 55. Only if a single "gatekeeper" justice determines that an appeal from the denial of subsequent motion for a new trial "presents a new and substantial question," or that the appeal implicates "a substantial risk of a miscarriage of justice," will a second, post-affirmance review by the full SJC be undertaken. § 33E; accord Jewett v. Brady, 634 F.3d 67, 76 (1st Cir. 2011).

A "single justice's determination that an issue is not 'new' within the meaning of § 33E is tantamount to a finding of procedural default, the classic example of an independent and adequate state ground." Lee, 777 F.3d at 55 (quotation marks omitted); accord Mendes v. Brady, 656 F.3d 126, 128-30 (1st Cir. 2011). "[A] procedural bar ruling" such as that "must stand in all but exceptional circumstances." Hodge v. Mendonsa, 739 F.3d 34, 44 (1st Cir. 2013); see Lee v. Kemna, 534 U.S. 362, 376 (2002) (discussing "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate").

---

[6] Because "[i]t is customary to address the procedural default issue on habeas first, . . . even when the likely affirmance on the ultimate question . . . uphold[s] the state court judgment," that is the analytical approach this Court will apply here. Lynch v. Ficco, 438 F.3d 35, 46 n.10 (1st Cir. 2006).

10

Here, the single justice concluded Brown's claim was not "new," as "the state of the evidence, and trial counsel's advice to the defendant, were both known when the defendant filed his direct appeal, and the question of ineffectiveness could have been argued in that appeal." Doc. No. 1-1 at 9. Careful review of both parties' submissions, including the record of all pertinent state court proceedings, reveals nothing about the single justice's conclusion or the underlying facts of this case which even remotely approaches the sort of exceptional circumstances required to justify a federal habeas court taking the rare step of "upset[ting] the [state court's] procedural default holding." Hodge, 739 F.3d at 44.

At all relevant times, Brown knew what he believed trial counsel had advised him and how that advice impacted his decision with respect to the plea offer.[7] Nothing prevented him from explaining that information to his appellate counsel or presenting it to the SJC on direct review. That his conversations with trial counsel were privileged does not mean Brown himself could not have disclosed the substance of those conversations to support a challenge to trial counsel's effectiveness on direct appeal (as he has done now). And, as the First Circuit explained in upholding a finding of procedural default on facts directly analogous to those presented here, to the extent Brown's challenge to trial counsel's effectiveness relied on facts beyond the existing trial record, § 33E "authoriz[es] filing a new trial motion in the [SJC] while a direct appeal is lodged there, with an opportunity to make a supplementary record to support it." Mendes v. Brady, 656 F.3d 126, 130 (1st Cir. 2011) (Souter, J.).

---

[7] He also plainly knew, as did his appellate counsel, that the withdrawal defense trial counsel presented at trial had not succeeded. Instead of challenging trial counsel's pursuit of such a defense, Brown's direct appeal asserted that the trial court's legal instruction explaining withdrawal unfairly allocated to him a burden of persuasion. S.A. at 42.

11

Because Brown has provided "no sound reason" not to "accept the adequacy and independence of the [SJC's] application of the new-and-substantial rule to [his] ineffective assistance claim," the state court's procedural bar ruling stands. Accordingly, Brown's federal claim is procedurally defaulted and subject to dismissal.[8]

B. Merits

Even if the single justice's finding that Brown's claim is not "new" were not a bar to this Court's review, his petition would fare no better on its merits. Both the motion court and the single justice concluded the record did not support Brown's assertion of ineffectiveness, as it established trial counsel repeatedly and unambiguously urged Brown to accept the plea offer, and provided a competent and accurate assessment of the likelihood that Brown would be convicted of first-degree murder if he elected to proceed to trial. See Doc. No. 1-1 at 8-10 (assessing the merits in the context of its conclusion that Brown's claim was not "substantial"); Doc. No. 1-2 at 10 (rejecting Brown's claim on its merits).

These conclusions were neither contrary to, nor an unreasonable application of, Strickland, Lafler, or Frye, nor did they rest on unreasonable determinations of the facts. It simply cannot be the case that a criminal defense lawyer, faced with a client who "vehemently" insists on rejecting what he has urged is a favorable plea offer, Doc. No. 1-2 at 5, renders constitutionally deficient assistance when he explains the theory of defense he would pursue if compelled to defend the case at trial *and also* candidly explains his assessment of the theory's weaknesses, the strength of the prosecution's evidence, and the overwhelming likelihood of conviction by a jury. Indeed, the Supreme Court has explicitly declined "to elaborate or define

---

[8] Brown has not attempted to show cause for his default, nor could he on the record before this Court. Likewise, he has not asserted, let alone demonstrated, actual innocence. Accordingly, there is no basis to excuse his procedural default.

12

detailed standards for the proper discharge of defense counsel's" responsibilities in the plea bargaining process, recognizing that "alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable" to establish such standards. Frye, 566 U.S. at 145. The absence of such clearly established standards is fatal to Brown's claim.[9]

IV. CONCLUSION

It makes sense that Brown, with the benefit of hindsight, laments his decision to insist upon a trial—a decision which ultimately cost him a chance at parole. But Brown's understandable regret does not render ineffective trial counsel's reasonable and correct advice with respect to the plea offer or his zealous effort to manufacture a defense where there was none. Because his claim fails on its merits, Brown's habeas petition is DENIED.[10]

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

[9] The SJC's finding that the trial evidence could not have supported a finding of withdrawal does not retroactively render trial counsel's pretrial advice deficient. The record demonstrates that trial counsel's advice to Brown was not a promise "that his statement to the police *would support* an abandonment defense," as Brown now claims, Doc. No. 22 at 14 (emphasis added), but rather a realistic assessment "that *the only possible defense consistent with* the defendant's confession" would be abandonment, as the state courts recounted, Doc. No. 1-2 at 4 (emphasis added). Nothing about that guidance is legally incorrect. The Constitution does not require an attorney in the position of Brown's trial counsel to announce: "I don't have a trial defense that I can mount for you," so "a plea is your only option." Doc. No. 22 at 23 (quoting the transcript of post-conviction counsel's argument at the state court motion hearing). The decision whether to plead guilty belongs solely to the defendant. If a defendant insists on a trial against his lawyer's advice, that lawyer is not only *permitted*, but ethically and constitutionally *required*, to zealously defend his client at trial. And, in the hands of able counsel, armed with a jury instruction making his theory of defense available to jurors, an acquittal might be "possible," even if it is exceedingly unlikely, and even if the defense theory is legally imperfect.

[10] As "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), no certificate of appealability shall issue. No exceptional circumstances justify setting aside the procedural bar the state court invoked with respect to Brown's claim, and, in any event, the record is wholly devoid of any factual or legal basis for finding Brown's trial counsel performed deficiently in advising Brown regarding the plea offer or in any other manner.

13